UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA )
)
)
v. ) CRIMINAL NO. 15-20840-MGC
)
SALOMON BENDAYAN, )
Defendant )
_____ )

### MOTION TO DISMISS COUNT I OF INDICTMENT 15-CR-20840-(MGC) FOR VIOLATIONS IN RECKLESS DISREGARD OF U.S. v. BRADY, OR IN THE ALTERNATIVE TO PROHIBIT THE USE OF GOVERNMENT'S DISCOVERY PROVIDED IN VIOLATION TO F.R.CRIM.P. 16(d)(2)(C).

NOW comes the Defendant Salomon Bendayan ("Defendant"), by and through his undersigned counsel, Howard B. Brownstein, Esquire, and hereby respectfully moves this Honorable Court to dismiss Count I of Indictment 15-CR-20850-(MGC) for violation of *Brady vs. Maryland*, 377, US83(1963), and further to prohibit the use of provided discovery in violation to FRCP 16(d)(2)(C).

### ARGUMENT AS TO BRADY VIOLATIONS

A district court may dismiss an indictment under either of two theories. First, the court may dismiss an indictment "on the ground of outrageous government conduct if the conduct amounts to a due process violation." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008). Alternatively, "if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." Id. The court's supervisory powers may be exercised "to remedy a constitutional or statutory

violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). To justify dismissal under the Court's supervisory powers, the government's conduct must be: (1) flagrant; and (2) cause substantial prejudice to the defendant. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988); Chapman, 524 F.3d at 1085.

"[A]ccidental or merely negligent governmental conduct is usually insufficient to establish flagrant misbehavior. *Chapman*, 524 F.3d at 1085. However, a finding of "willful misconduct," in the sense of intentionality, is not required. Rather, "reckless disregard" satisfies the standard for dismissal. *Id.* As it was explained in Chapman: "We have never suggested 'that 'flagrant misbehavior' does not embrace reckless disregard for the prosecution's constitutional obligations." *Id.* In Chapman, the court found that it was the government's failure to produce Brady material ..., its failure to keep track of what had been produced, and its affirmative misrepresentations to the court of full compliance, that "supported the district court's finding of 'flagrant' prosecutorial misconduct, even if the documents themselves were not intentionally withheld from the defense." Id. The Chapman court also noted that the government had "received several indications, both before and during trial, that there were problems with its discovery production, and yet it did nothing to ensure that it had provided full disclosure . . ." Id.

"Where the district court concludes that the government was dilatory in its compliance with Brady, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, dismissal, or even mistrial. The

2

choice of remedy also is within the sound discretion of the district court. Fed. R. Crim. P. 16(d)(2) authorizes the district court in cases of non-compliance with discovery obligations to 'permit the discovery or inspection,' ... 'prohibit the party from introducing the evidence not disclosed,' or 'enter any other order that is just under the circumstances.' In certain cases, dismissal may be warranted: "Brady violations are just like other constitutional violations. ... [A] district court may dismiss the indictment when the prosecution's actions rise . . . to the level of flagrant prosecutorial misconduct." *United States v. Chapman*, 524 F.3d 1073, 1086 (9th Cir. 2008) ("Because the district court did not clearly err in finding that the government recklessly violated its discovery obligations, and made flagrant misrepresentations to the court, we hold that the dismissal was not an abuse of discretion."). Accord is *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005) ("While retrial is ... available for a Brady violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper.").

The United States Attorney's Office District of Massachusetts (USAO-Boston) has consistently engaged in a pattern of conduct that has existed throughout this prosecution that exemplifies a complete and recklessly disregard of their obligations under *Brady v. Maryland*, 377, US83(1963). First, a very recent example is that our office very recently just received discovery in the form of a copy of a HSI Report, dated June 11, 2015. This report contained detailed notes from a 5 hour proffer session with Martin Lustgarten and the USAO-Boston on this date. This discovery was only produced after my repeated requests were made for same. This HSI Report (#286) is indeed quite lengthy and detailed, but completely void of the exculpatory/Brady material statements that were

3

made by Mr. Lustgarten in the course of this proffer. It was only through the discovery of an email by Lustgarten's counsel requesting an explanation from the AUSA for these omitted exculpatory statements that we first become privy to this omission and *Brady* violation. This HSI Report blatantly and intentionally omits the exculpatory statements by Martin Lustgarten as it directly relates to Salomon Bendayan and this indictment. This conduct by the government is outrageous! The omission is even more inexcusable considering that in all likelihood the report, given its level of otherwise comprehensive and lengthy detail, was prepared from that of an undisclosed (cell phone?) audio recording of this 5 hour proffer session. Specifically, what was was knowingly and intentionally omitted from this HSI Report were the exculpatory statements of Lustgarten in response to a heated and emotional exchange of words between between them – so in that context it was perhaps the most memorable and dramatic event of the proffer session. S.A. Lavoie asked Mr. Lustgarten about his relationship with and his personal knowledge about Bendayan. Mr. Lustgarten replied candidly and truthfully that based upon his personal knowledge and business relationship with Bendayan over the years that he was a good man, a religious man, and that as far as he knew Bendayan was only involved in legitimate business transactions.

Second, the USAO-Boston also tried to hide and failed to reveal to us that Andres Uricoechea (named co-defendant who has never been arraigned or an arrest warrant requested) stated to DEA-Miami S.A. William Callo that the subject wired funds that had been wired by Salomon Bendayan to Banah Sugar Inc. (located in Hialeah, Florida), was done merely at the direction of Andres Uricoechea as the repayment of a debt that he was owed. These wires were for money owed by Salomon Bendayan to Andres

4

Uricoechea as the direct result of legitimate joint business dealings and transactions with their company R.21. We did receive a DEA-6 Form from DEA Miami with an anonymous SOI stating the above. However, we were left to our own imagination and creativity to deduce that the SOI was Andres Uricoechea. This highly exculpatory information was not provided in a use and informative format, and the USAO-Boston has never advised or explained to us the nature and critical importance of this exculpatory information.

## ARGUMENT - DISCOVERY VIOLATIONS

In addition, to make matters more objectionable and untenable, on October 28, 2015, we received certain DEA proffer reports dated from January 2015 to July 2015. The information set forth in these reports directly contradicts the previously mentioned DEA-6 of the SOI (Uricoechea) -- but with no explanation for this discrepancy.

On November 9, 2015, we finally received a short several minute video clip of Salomon Bendayan's arrest statement of April 8, 2015. What is missing is most all of this video recording since this interview spanned an hour or so, not several minutes. So, where is the video of the complete one hour interview that took place on this date? Of additional great concern is that there cannot be any credible reason offered to this court for the government to have withheld this video from us, and for continuing to do so as to having access to the entire interview. This was supposed to be part of their required initial discovery, not to provide our client's arrest statement seven months later and 4 weeks before the commencement of trial.

On November 10, 2015, we received approximately thirty (30) pages of discovery containing certain general information about money pickups in the Island of Jamaica,

Mexico, and the States of Ohio and New York. The paid money was allegedly directed to be wired to Banah Sugar Inc. by a person allegedly named Alfredo Tascon, who is not known to us in any capacity, or is one who is named co-defendant. Additionally, none of any of the alleged transactions have any connection to Salomon Bendayan, nor to any of his companies. The government, at the eleventh hour of Trial, is now attempting to muddy the waters of preparation with 404B evidence that is highly prejudicial, irrelevant to the case against Salomon Bendayan, and is designed only consume our valuable time and create distractions to the preparation for trial.

Further, on November 13, 2015, we have received a Federal Express package that contained a US Western Digital Elements 500 GB Drive containing 207 GB of data of images seized from the co-defendant Martin Lustgarten's laptop and cellphone at the time of his arrest on April 8, 2015. This data, if relevant at all, has been in the possession of the government since April 8, 2015, and it is now being produced at the eleventh hour some seven months late. I have been advised by co-counsel that the drive contains 1000's of pages of data, including documentation for over 10,000 legitimate financial business transactions, spanning a period of time of almost ten (10) years, and that it would take at least several months full-time to review this information. What the government could have done, but chose not to, was to advise what, if anything, contained therein that they feel is relevant and intend to offer into evidence – that would have been a more practical approach and had this happened months earlier within the mandatory discovery time parameters.

According to the District of Massachusetts Local Rules (116.3), that all of the above "automatic discovery" should have been produced within twenty-eight (28) days

6

from arraignment, unless a waiver is signed by the defendant -- which was not done in this case, and also under the Local Rule 88.10 in this District being 14 days after arraignment. However, this situation here is that over seven (7) months has now elapsed since the indictment (April 1, 2015) and arrests (April 8, 2015) of the defendants, the co-defendant Mr. Lustgarten has been held in pre-trial detentions throughout all of this period of time as the insistence of these same AUSA's, and yet we are still receiving trickles of discovery and minimized *Brady* materials.

This situation as described herein, and other such related misconduct of the government throughout these proceedings, warrants the Court's dismissal of this indictment, or in the alternative to enter an order excluding all of the government's discovery that has been untimely produced after a reasonable period of time following the arrest of Bendayan on April 8, 2015, pursuant to the discovery and inspection F.R.Crim.P. 16(d)(2)(C), which states in pertinent part as follows:

> **(2) If a party fails to comply with this rule, the Court may:**
> ...
> **(C) prohibit that party from introducing the undisclosed evidence; or**
> **(D) enter any other such order that is just under the circumstances.**

## CONCLUSION

It is for the above reasons, we respectfully request that the Court prohibits the government's use and introduction of any untimely produced evidence and materials, specifically including, but not limited to:

(a) The so-called "Banah Sugar" discovery that has just been provided; and

7

(b) the so-called images and information allegedly retrieved from the Martin Lustgarten cell phone and/or laptop that has just been provided;

(c) the Bendayan arrest video (partial) that has just been provided;

(d) DEA-6 Reports of money pickups that are from DEA-New York that has just been provided.

Further, we respectfully request that the Court dismiss Count I as to Salomon Bendayan for the reckless disregard and violation of the obligation of the USAO-Boston to "timely" and "completely" disclose exculpatory / Brady material. In this regard, a Motion was previously filed by our offices for same continuing issues and violations in our initial Omnibus Filing (Docket #120) on August 11, 2015.

Respectfully submitted,

BROWNSTEIN & ASSOCIATES, P.C.
Attorneys for Salomon Bendayan

/s/ Howard B. Brownstein
HOWARD B. BROWNSTEIN, ESQ.
512 42nd Street
Union City, New Jersey 07087
(201) 866-4949
hbb@bba-law.com

Dated: November 16, 2015

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2015, I electronically duly filed the foregoing document with the Clerk of the Court using CM/ECF.

By: /S/ Howard B. Brownstein
HOWARD B. BROWNSTEIN, ESQUIRE